The next case on the calendar is is Eminem v. Rockefeller University Amamian May it please the court. My name is Elise Bloom, and I represent Rockefeller University, the appellee and cross-appellant in this case. I want to start by just answering Judge Underwood's question about the waiver of punitive damages. I believe that that question is answered by this court's decision in the Caruso case, which is very clear that the fact that you may submit a punitive damage charge in proposed instructions to the judge does not relieve you of the obligation to restate that objection after the charge is given. And in this case, what Judge Batts had said during the proceedings is exactly what Judge Livingston recalled, that she wasn't inclined to give a punitive damage charge. But once she submitted the draft charge to the parties that did not contain a punitive damage charge, it was incumbent upon plaintiff's counsel to raise that objection, because for all the judge knew, they at that point had concluded that she was correct. They did not raise an objection to the lack of a punitive damage charge, although they did raise a number of other objections to the charge. It is our position that this court should grant judgment for the university for three independent reasons. The first reason is that the jury unanimously concluded that the university did not intentionally discriminate against the plaintiff in its initial verdict. Each juror confirmed that verdict. They confirmed upon being polled that that was their decision. The trial court abused her discretion in allowing the discharged jury to reconsider its verdict after having been exposed to external influences. Under the Supreme Court's decision in Dietz, the district court has limited authority to allow a jury to re-deliberate. There are very strict guardrails. The first one is that there has to be an error or an inconsistency in the verdict. Isn't there an error here? I'm the jury did check unanimously. The university treated her less well, at least in part, because of her race, national origin. There is not an error here, because in question one, the only question that asked the jury to decide whether or not the plaintiff had proved by a preponderance of the evidence that the defendant intentionally discriminated against her, that was the only question that asked the jury to determine whether or not there had been intentional discrimination. And in answer to that question, the jury said no. Even Judge Batts, after the verdict was read, my opposing counsel objected, and we had a sidebar. Judge Batts, at that sidebar, when they raised the fact that there were one answer to the first part of one, and then that there was a different answer, there was an answer on the liability question that said no, Judge Batts said unequivocally, but you haven't proved it. Even my adversary agrees that if there were one question that went to the question of individual liability, that was the second question. I guess my difficulty, and help me understand how I should be looking at Dietz in this context, it appears to say that a district court judge has the power to rescind the discharge order and to send the jury back when there's an error. It doesn't explicitly address our situation, but here it seems that the jury itself was calling to the district court's attention that there was an error here. My adversary has left out a critical piece of the record. What we were at sidebar, and it was after the verdict had been read, and, in fact, the jury had had an opportunity to observe the plaintiff's reaction to the verdict, the foreperson said to the clerk, you didn't read why didn't you read everything we wrote. And it's important to note that this is the foreperson who had confirmed not once, but actually twice, that the verdict was her verdict. At that point, the clerk said, Judge, they've made a mistake. It was the clerk who characterized it as a mistake. And actually, under the law, the fact that a jury wants to award damages out of — for whatever reason, absent a finding of liability, it would be a clear error of law to do that. And this Court looked only no further than its own decision in Labonia. And in that case, the Court specifically held that the fact that the jury might write down damage numbers after having found it was an excessive force case involving a police officer, but after having found that there was an immunity, the fact that they wrote down a damage award does not — the Court should strike the damage award. That's also consistent with the closest case. But it's a little different than what appears to be an inconsistency here. No liability, but damages? Well, it's very much like the Freeman case out of the Seventh Circuit. And we couldn't find a case similar in this circuit. But that was a racial harassment case. And in that case, the jury had checked a box that said that the plaintiff had been harassed. But then as to the second question about whether or not they had proved by a preponderance of the evidence that it was motivated by race, they checked no, and they still wrote in damages. The Court held, again, that the jury's desire to award damages out of sympathy, or simply their desire to award damages to the plaintiff, absent a finding of liability, in that case, the damage award should be stricken. And in this case, the only question, the only question that went to intentional discrimination  And to that question, the jury answered no. With regard to and if the judge wanted to send them back in to deliberate, under Dietz, it was incumbent upon the Court to ensure that the jury had not been exposed to any external influences. And we know that by the time the jury went back in to reconsider its verdict, we had the clerk's statement, which was different than what the foreperson had said. And the record's very clear on that. And then we had the judge adopting what the clerk had said and said to the jury, do you want to go back in and make it — make a change, or do you want to — she said, do you need to go back into the jury room and straighten something out? Do you need another verdict form? Picking up on what the clerk had said, and without some inquiry as to whether or not the jurors had been — whether what the jurors were saying — you didn't read everything that we wrote down — was consistent with the characterization of the law — the court clerk, without some effort to ascertain whether or not the jury had — had the opportunity to view the plaintiff's reaction to the verdict, the judge — for essentially give no ability in the district court judges. I mean, the district court cannot prevent the verdict from being announced, and then there's a mistake ensuing. And in every case, there will be presumably people in the courtroom who in some way have an opportunity to react to the verdict. That's essentially all we have in this record. That's exactly what was contemplated in the Dietz case, because in the Dietz case, the court said, you know, even a — you can't record every reaction. Even a gasp can have that impact. The Dietz case also said, even the clerk saying to the jury, good job, can have an impact. The point is the judge should have at least taken — Sotomayor, you didn't say that for that reason, we can never reconvene the jury. You can reconvene the jury, and there are cases where the district court does reconvene the jury. But if you're going to reconvene the jury, you've got to ascertain whether or not there have been external influences, and that didn't happen here. External influences? I thought the court said it's the suggestion of prejudice from those influences, right? I'm sorry. I didn't understand. Suggestion of prejudice from those external influences. Well, you got — exactly. Otherwise, it would be anything. Otherwise, I'm sorry? It would be anything. Right. Exactly. But the court needs to do — the court needs to do something to ensure that the jury has not been influenced by either what the clerk in this case said or whether the jury had an opportunity to observe the plaintiff and whether the jury was in any way influenced by that as well. So it's our — it's our position that under Dietz, the court abused its discretion. Two other quick points that I wanted to make. We do think there's an additional basis to find for the university in this case, and that is the plaintiff's deliberate and intentional concealment of evidence that should have been disclosed during the discovery period, after the discovery period when she was supposed to supplement her — her discovery. And the evidence consisted of the identity of 18 mental — of 18 medical providers and the fact that she also had filed a lawsuit in which she gave testimony that directly contradicted her testimony in this case as to her compensatory damages. I see that my time is up. We have your argument, and you've reserved some rebuttal time. Thank you. Two points, Your Honors. First of all, there was not one, but there were two questions on that verdict for him that go to the question of culpability and liability. The first question asked, if any — if — as to the verdict form, question number one, which of the protective statutes, if any, do you find unanimously that the plaintiff proved by a preponderance of the evidence the university treated her less well as — at least in part because of her race, national origin, gender, and religion? They said race and national origin. Under New York City human rights law, that's a complete finding of liability. It didn't have to go further. There was — So the second question — so by your argument, the second question is superfluous. I'm sorry? Yes. You didn't need the second question. We didn't need the second. We argued against it. In fact, in the charging conference, counsel for the defendants actually argued different than what they're arguing here today. They said — and it's on page 26 of our brief — they said that — to the language, it's because of that — that because of — the court asked Mr. Mufson, who's president of court, so the intentional is where, Mr. Mufson? The because of. Because of the actual perceived protective categories. So they're now arguing something that they argued just the opposite of at the trial. The other thing is, there was no deliberate and intentional concealment of evidence. The first issue that they talk about in terms of the evidence had to do with the testimony of Dr. Goldstein. They made a big point of the fact that he interviewed the plaintiff subsequent to his 2010, when he filed his official report. But if you look carefully at the transcript of that, you'll see that on — on direct, the plaintiff didn't go into any of that post-2010 view he might have had about her damages. That was brought out by counsel for the defendant on a cross. They said — and they did it because they wanted to show, obviously, that he hadn't talked to her for many, many years. They said, so everything you said about her condition on the witness stand this morning relates to what things were like for her in June of 2010. And she said yes. And then rather than settle for that, they went one step further and one step too far, perhaps. They asked, so you can't tell us about what her mental health is like today. Dr. Goldstein said, yes, yes, but I don't know if I'm allowed to. So rather than, at that point, asking for a sidebar, they went ahead and asked the other question. And that's where he answered — well, they asked her, so you're just speculating about how she might be today. And she — and Dr. Goldstein answered, no, I saw her again recently. That's when they asked for the sidebar. So my — you know, you don't — on cross-examination, you shouldn't ask a question you don't know what the answer is. So let me ask a question about remandatory. Is there any case law supporting a $2 million emotional distress verdict? No, Judge, there is not. None that we found. Our argument — that's in the brief as well — is basically that you have to look at the totality of the circumstances and that, particularly under New York City human rights law, which is designed to be more progressive than Title VII, that if you look at the totality of the circumstances here, under any — that the verdict of $2 million was sustainable and that the Court should not have reduced it by 90 percent. Okay. Thank you very much. I'm sorry. That's all right. Thank you. In answer to your question about whether or not it was the first question or the second question in the verdict form that was superfluous, if you look at Joint Appendix 3947, what you will see very clearly is that my adversary actually argued that the second question was the key question, and if the Court was going to only ask one of those questions, then the Court should ask the second question, and that the first one was, in fact, superfluous. With regard to the remediator, it is our position that the judge's remediator was appropriate and was consistent with the law in this circuit, which is what she was required to do. However, I would add that given the information that came to light after the trial, specifically the fact that although the plaintiff had an obligation to identify all medical providers, that there were 18 that she failed to identify in this case, and that she gave testimony in this case as to emotional distress, which was completely contrary to the testimony that she gave in a medical malpractice case, and the significance is that she was claiming medical malpractice that occurred as a result of a hospital stay in 2012. In our case, her testimony with regard to her emotional distress was that she suffered severe emotional distress and also had physical manifestations that included hair pulling from 2007 to 2012 and then forward. In the medical malpractice case, she testified that she had only a little bit of anxiety, and I should say the testimony in the malpractice case, the record reflects, was given in 2015. She testified that she had only a little bit of anxiety until 2012, and that anxiety was 10 years prior, which would have put us back at 2005, and that her anxiety and her emotional distress all occurred as a result of the medical malpractice in 2012. So this Court should not reward somebody who has given contrary and conflicting testimony that is clearly designed to obtain a particular result depending on which case she's testifying in. Is there any authority for the proposition that a judge should be reversed for abusive discretion for imposing too light a sanction in the discovery context? There's not authority for the proposition that a judge should be reversed, but the proposition ---- Or a case dismissed? Well, there is certainly authority for the proposition that dismissal is an appropriate sanction based on the gravity of the conduct. Right. It may be appropriate, but when it hasn't been ordered, is there authority by the appellate court reversing and dismissing because of a discovery ---- discovery problem? We did not find any authority in ---- with facts similar to these where a district court judge had awarded a certain type of a sanction, and then the appellate court in reviewing that sanction had found that that sanction was not sufficiently severe. It is our position, though, that given the totality of the circumstances, that the conduct in this case was very, very egregious, and that the sanction of dismissal is supported by the case law, and that the district court judge should have dismissed this action as opposed to just the lesser sanction. But even if you agree with the district court's lesser sanction, that is just further support for, at the very least, supporting the $200,000 remitter that Judge Batts had entered, which was prior to the discovery of this additional evidence, which  damages after 2012. And allowing us to use the testimony. That's exactly right. Thank you. Thank you both. We will take the matter under advisement.